IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

DAVID CAMPBELL,                    )
                                   )
          Plaintiff,               )
                                   )
vs.                                )        No. 12-cv-2848-STA-dkv
                                   )
HARTFORD LIFE AND ACCIDENT         )
INSURANCE COMPANY,                 )
                                   )
          Defendant.               )
                                   )

---

REPORT AND RECOMMENDATION TO GRANT DEFENDANT HARTFORD LIFE AND
ACCIDENT COMPANY'S MOTION FOR JUDGMENT ON THE RECORD

---

On September 25, 2012, the plaintiff, David Campbell
("Campbell"), filed a *pro se* complaint against the defendants,
Hartford Life and Accident Insurance Company ("Hartford"),
Marvin Windows of Tennessee, Inc. ("Marvin Windows"), Marvin
Lumber and Cedar Company ("Marvin Lumber"), and Benefit
Management Services — Minneapolis Disability Claim Office
("BMS"). (Compl., ECF No. 1.)   The complaint was accompanied
by a motion seeking leave to proceed *in forma pauperis*, (ECF No.
2), which the court granted on October 16, 2012, (ECF No. 3).
In his complaint, Campbell alleged that the defendants
wrongfully denied him long-term disability ("LTD") benefits
under a group insurance policy governed by ERISA. (Compl. ¶ 4,
ECF No. 1.)   Pursuant to 28 U.S.C. § 1915(e)(2), the court
dismissed *sua sponte* Campbell's claims against Marvin Windows,

Marvin Lumber, and BMS and ordered service of process on Hartford on January 16, 2013. (Order of Partial Dismissal, ECF No. 4.)

Now before the court is the May 30, 2014 motion of Hartford seeking judgment on the record. (Def.'s Mot. for J. on the R., ECF No. 30.) Hartford asserts that Campbell's long-term disability ("LTD") benefits under a group insurance policy governed by ERISA were properly terminated. Campbell did not respond to the motion, and the time for responding has expired. The case was referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate on March 28, 2013. (ECF No. 5.) For the foregoing reasons, it is recommended that Hartford's motion for judgment on the record be granted, and the case be dismissed in full.

## I. PROPOSED FINDINGS OF FACT

This case arises out of Hartford's determination that Campbell was not entitled to benefits under an ERISA-governed Group LTD Plan (the "Plan"), which was sponsored by his former employer, Marvin Windows. Hartford insures and acts as the claims administrator for the Plan and issued Group Policy No. GLT-207293 (the "Policy") at issue in this case.

## A. Campbell's Initial Claim and Award of LTD Benefits

Campbell was previously employed by Marvin Windows as an Assembler before he stopped working on July 26, 2008 based on complaints of plantar fasciitis in both feet and a plantar fascia release surgery on his left foot scheduled for July 30, 2008. (Admin. R. 252-53, ECF No. 45-2.)[1] As stated by Campbell's Team Leader at Marvin Windows, Campbell's position as an Assembler required him to push door carts and lift door products, as well as stand and walk for eight hours a day with three breaks during the day. (*Id.* at 233-34.) Campbell's foot surgery was performed by Dr. Carl Huff, an orthopedic surgeon, who recommended that Campbell remain off of work until November 2008 for his recovery. (*Id.* at 212, 246.)

In November of 2008, Dr. Huff indicated that Campbell should be limited to standing and walking for two hours a day, and he ordered arch supports to alleviate Campbell's pain. (*Id.* at 203.) On December 2, 2008, Dr. Huff restricted Campbell's sitting to four hours a day, four hours at a time; Campbell's standing and walking to one hour a day, fifteen minutes at a time; Campbell's lifting or carrying up to ten pounds a day occasionally; and Campbell's fingering and handling up to sixty-

---

[1] The court's citation to page numbers is based on the pagination designated by ECF. Hartford, on the other hand, referred to the page numbers it provided at the bottom of each page of the entire administrative record in its motion for judgment on the pleadings. This accounts for the differing page numbers.

seven percent of a day.  Although he wrote in his report that Campbell's restrictions were "permanent," he stated that Campbell was "temporarily" unable to return to work for eight weeks.  (*Id.* at 195-97.)

In a questionnaire provided by Hartford dated January 2, 2009, Campbell wrote that he had completed three years of high school and that he previously worked as an assembler for eight years and for a machine operator for fifteen years. (*Id.* at 203.)

On January 22, 2009, Dr. Huff indicated that Campbell was unable to return to work and that his permanent restrictions letter had been sent to Hartford.  He recommended physical therapy for four weeks and insoles and prescribed Mobic.  (*Id.* at 177.)  In a report to Hartford dated January 23, 2009, Dr. Huff noted that his primary diagnosis of Campbell was a severe planovalgus deformity of the foot, and his secondary diagnosis was plantar fasciitis.  (*Id.* at 182.)  Based on the foregoing facts represented in medical records submitted by Campbell's treating physicians, Hartford approved Campbell's claim for LTD benefits due to his inability to perform his occupation.  (*Id.* at 94.)  Campbell's award letter from Hartford dated February 3, 2009 quoted the definition of "disability" under his Policy, indicating that it meant either "Totally or Residually Disabled."  The letter noted that as of May 3, 2011, after

benefits had been payable for twenty-four months, Campbell must be "Totally Disabled from performing Any Occupation to remain eligible for benefits."  Total disability under the Policy, as indicated in the letter, means:

> 1. during the Elimination Period; and
> 2. for the next 24 month(s), you are prevented by:
>     (a) accidental bodily injury;
>     (b) sickness;
>     (c) Mental Illness;
>     (d) Substance Abuse; or
>     (e) pregnancy,
>
>     from performing the Essential Duties of Your Occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.
>
> After that, you must be so prevented from performing the Essential Duties of *Any Occupation* for which you are qualified by education, training, or experience.

(*Id.* at 94-97)(emphasis added).

B.  <u>Hartford's Continued Review of Campbell's Disability Claim</u>

On April 24, 2009, a second orthopedic surgeon, Dr. Apurva Dalal, examined Campbell and diagnosed him with "bilateral severe plantar fasciitis with a failed surgical and conservative line of treatment."  He stated that at present, no further treatment was necessary and that "[i]n future it is best for him to avoid standing for prolonged hours and lifting any weights over 50 pounds."  Dr. Dalal did not place any restrictions on Campbell's sitting.  (*Id.* at 169.)

On December 29, 2009, Campbell's internist, Dr. Cummings, completed an Attending Physician's Statement of Continued Disability. In the statement, the internist did not answer questions related to the anticipated duration of Campbell's restrictions, and he did not provide opinions concerning Campbell's ability to lift, kneel, or reach. He echoed Dr. Huff's restrictions and limited Campbell's sitting to four hours a day, four hours at a time, and Campbell's standing and walking to one hour a day, fifteen minutes at a time. (*Id.* at 163-64.) Dr. Cummings's office notes reflected that Campbell had foot tenderness and was obese. (*Id.* at 156-57.)

During December of 2009, Campbell completed a Claimant Questionnaire, in which he wrote that his condition had changed in the last eighteen months because "[t]he right heel now bothered now I hurt every step I take." (*Id.* at 158.) He indicated in this questionnaire that he was a graduate of Gateway Christian High School. (*Id.* at 159.)

On January 21, 2010, Dr. Cummings repeated his previous restrictions and added the restriction that Campbell should only life up to ten pounds occasionally, and should reach, finger, and handle up to sixty-seven percent of the time. (*Id.* at 154.)

In February of 2010, Hartford made multiple phone calls to Campbell that were not returned. On one occasion, a child answered and indicated Campbell would be home after 3:00 P.M.,

but when Hartford followed up, he was still not home. (Admin. R. 133, ECF No. 25-1.) One Hartford analyst, after unsuccessfully attempting to call Campbell, made a note that it was unclear why Campbell's sitting was restricted to four hours a day when he had a foot condition. (Admin R. 146, ECF No. 25-2.) Hartford also attempted to make contact with Campbell by mailing him a letter requesting him to return its phone call so Hartford could manage his claim. (*Id.* at 77.)

On June 10, 2010, an Administrative Law Judge ("ALJ") denied Campbell's application for Social Security Disability benefits after his application had previously been denied twice. (Admin. R. 56, ECF No. 25-3.) The ALJ based her decision on the findings of an Independent Medical Examination ("IME") performed by Dr. Dalal, which found that Campbell had a ten percent impairment in each lower extremity and recommended that Campbell avoid standing for prolonged hours or lifting weight over fifty pounds. (*Id.* at 64.) The ALJ concluded that Campbell's degenerative disc disease of the lumbar region of the spine was not a severe impairment because the evidence indicated it had no more than a minimal effect on his work. (*Id.* at 62.) She further found that Campbell's foot condition and obesity permitted him to sit for six or more hours; stand or walk for a maximum of two hours a day during an eight-hour work day; lift and carry up to fifty pounds occasionally and up to twenty-five

pounds frequently; and balance, stop, kneel, crouch, and crawl frequently. (*Id.* at 66.) Accepting the testimony of a vocational expert, the ALJ determined that considering Campbell's "age, education, work experience and residual functional capacity, [Campbell] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 67.)

C. Hartford's Investigation and Initial Decision to Terminate Campbell's LTD Benefits

On August 6, 2010, Hartford gave notice to Campbell that it was investigating whether he qualified to receive benefits because he was "so prevented from performing the Essential Duties of Any Occupation." (Admin. R. 63, ECF No. 25-2.) As stated in the letter, "any occupation" means an occupation "1. for which you are qualified by education, training or experience; and 2. that has an earnings potential greater than an amount equal to the product of your Indexed Pre-disability Earnings and the Benefit Percentage." (*Id.* at 64.)

As part of this investigation, Hartford requested updated medical records and other information concerning Campbell from Dr. Huff and Dr. Cummings. (*Id.* at 60-61.) Dr. Huff responded that it did not have any records for the period from September 1, 2009 through October of 2010 and stated that Campbell had moved out of state in May of 2009. (Admin. R. 77, ECF No. 25-

3.)    Dr. Cummings provided an Attending Physician's Statement dated October 20, 2010, stating that Campbell's current medications were Ibuprofen for pain and high blood pressure medication.  He indicated the current treatment plan was to "continue current meds" and that Campbell had not been hospitalized or referred by other physicians.  Campbell's restrictions were the same as his prior restrictions: sitting for four hours at a time, no more than four hours a day, and standing and walking for fifteen minutes at a time, no more than an hour a day.  Dr. Cummings added that Campbell could participate in vocational rehabilitation services such as retraining assistance. (*Id.* at 86-87.)   In a November 18, 2010 form, however, Dr. Cummings's opinion of Campbell's ability to sit changed, and he submitted a report stating that Campbell could sit for eight hours in one day. (*Id.* at 91.)

Based on the conflicting reports of Dr. Cummings, Hartford conducted an employability analysis, which is reflected in the Employability Analysis Report, on November 29, 2010.  The report found that with the standing and walking restrictions stated in Dr. Cummings's October 20, 2010 and November 18, 2010 correspondence, Campbell could perform six sedentary occupations that met or exceeded his required earnings potential and matched his work experience. (*Id.* at 94-111.)

On December 9, 2010, Hartford informed Campbell by letter that his benefits would not be payable after February 2, 2011 because it had determined he was capable of performing other viable occupations. (Admin. R. 45, ECF No. 25-2.) The letter listed examples of such occupations. (*Id.* at 47-48.) On January 28, 2011, Campbell appealed this determination and requested medical records from Dr. Cummings from January 22, 2012 to present. (Id. at 39-40; Admin R. 120-21, ECF No. 25-3.) He then submitted new correspondence from Dr. Cummings dated January 26, 2011, which repeated Campbell's prior restrictions of sitting for four hours a day and standing and walking for fifteen minutes at a time, no more than one hour per day. Dr. Cummings estimated these restrictions should be in place for six months or longer. (Admin. R. 118-19, ECF No. 25-3.) In March of 2011, Dr. Cummings referred Campbell to orthopedics after an MRI showed dextroscoliosis, osteochondrosis, and spondylosis. (*Id.* at 122.)

Hartford requested clarification of Dr. Cummings's opinion regarding Campbell's ability to sit on March of 2011 by letter, specifically asking why he previously stated Campbell could sit for eight hours in one day, but then changed his opinion to four hours per day. Dr. Cummings merely replied with the single comment: "due to pain in legs and back." (*Id.* at 142.)

Continuing its investigation, Hartford obtained a peer review opinion from a board-certified orthopedic surgeon, Dr. Michael Errico, on April 20, 2011. (*Id.* at 147-53.) Dr. Errico reviewed Campbell's medical records and also spoke with Dr. Cummings on the phone. Dr. Cummings indicated that Campbell had a "great deal of difficulty walking and getting around," and that Campbell had developed degenerative changes in his feet and his back. Campbell's medications for his back condition were not strong in his opinion. Dr. Cummings had referred Campbell to an orthopedic surgeon, but Campbell had not gone to see him. Dr. Cummings believed that Campbell could do sedentary work, as long as he had the ability to stand up, move around, and loosen his back on a regular basis. He stated that Campbell's sitting should not be greater than one hour at a time, but Campbell could do a sedentary job for eight hours a day with the suggested hourly movement. (*Id.* at 147-48.) Dr. Cummings's record of the conversation also indicates that he explained that Campbell could not sit uninterrupted for eight hours, but he could do sedentary work with frequent breaks. (*Id.* at 13.) Dr. Errico's final finding was that despite Campbell's foot problems, he could work a full-time schedule with certain restrictions — namely, regular breaks to stand and walk, and lifting and carrying up to ten pounds occasionally. (*Id.* at 148.)

Based on the opinion of Dr. Errico, Hartford reviewed Campbell's employability prospects and determined that the sedentary occupations previously identified would not be suitable because they do not provide the ability to take hourly breaks. (*Id.* at 157.) Thus, on April 27, 2011, Hartford notified Campbell that he continued to meet the definition of disability beyond February 2, 2011. (Admin. R. 34, ECF No. 25-2.)

D.  Hartford's Re-Opening Campbell's Claim, Surveillance of Campbell, and Subsequent Termination of LTD Benefits

Hartford thereafter re-opened Campbell's claim. On September 1, 2011, Campbell completed a questionnaire indicating that his conditions were depression, high blood pressure, obesity, and inability to stand, walk, or sit normally. He stated he was self-employed in troubleshooting and virus removal for computers, but his earnings were zero dollars. Further, he indicated he was a home body, he was only able to sit for four hours at a time, and he was able to stand or walk for fifteen minutes at a time. (Admin. R. 160-61, ECF No. 25-3.)

On September 22 and 23, 2011, Hartford engaged surveillance to observe Campbell. Over a period of two days, Campbell was observed leaving his home for hours at a time to go shopping at six different stores and sit down and eat at a restaurant. He was seen pulling a large trash can to the road and other trash

on several occasions, and squatting repeatedly. He sat for long periods of time in both the passenger and driver positions of the vehicle. (*Id.* at 171-72.)

In a face-to-face interview on November 1, 2011, Hartford offered to show the surveillance footage to Campbell. He declined, but did not dispute that it accurately reflected his activities for the two days in question. He stated in that interview that his only treating physician was Dr. Cummings and asked whether surveillance would continue. (*Id.* at 24.) During the interview, Campbell was seen walking with a normal gait and standing with weight evenly distributed on both feet for over an hour. However, he stated that he could only walk for fifteen minutes, stand for ten to fifteen minutes, and sit for four hours. (*Id.* at 25-26.)

In December of 2011, Hartford sent the surveillance video to Dr. Cummings for further opinion on Campbell's ability to work full-time, but Dr. Cummings declined to become further involved. (Admin. R. 66, ECF No. 25-1.) Thus, Hartford engaged a second peer review by a board-certified physical medicine and rehabilitation doctor, Dr. Jamie Lewis. (Admin. R. 346-47, ECF No. 25-2.) Dr. Lewis reviewed Campbell's medical records, MRI, and Hartford's surveillance and investigation notes and attempted to contact Campbell on three occasions with no success. She concluded that in her opinion, Campbell needed

no restrictions on sitting, standing, walking, lifting, carrying, pushing, pulling, or reaching and that Campbell could work a forty-hour week. (*Id.* at 347-49.)

Hartford reviewed Dr. Lewis's report and performed another employability analysis in March of 2012, which found that eight sample alternative occupations could be performed by Campbell. Two of these positions were sedentary. (*Id.* at 309-10.) On March 23, 2012, Hartford notified Campbell of its determination that he could perform these alternative occupations and, thus, his LTD benefits would expire on March 23, 2012. The letter provided the applicable provision in the Policy and the information it considered to reach this conclusion, the definition of "disability" it determined he did not meet, and a list of the alternative positions. It further noted ERISA appeal information. (*Id.* at 17-23.)

E.  Campbell's Appeal of Hartford's Termination of Benefits

Campbell appealed Hartford's termination of his benefits on April 16, 2012. In his appeal, Campbell submitted a letter to Hartford from Dr. Cummings stating that Campbell continued to require standing and walking restrictions of fifteen minutes at a time, no more than one hour day. (*Id.* at 302.) Additional medical records, including Campbell's list of medications, were provided to Hartford.

In response to Campbell's appeal, Hartford engaged a third peer review of Campbell's medical records, performed by Dr. Steven Lobel, a board-certified physical medicine and rehabilitation doctor. Dr. Lobel attempted to contact Campbell on three occasions but was not successful. Ultimately, Dr. Lobel concluded in a May 30, 2012 report that no restriction or limitations on Campbell's sitting, standing, walking, reaching, lifting, fingering, or other activities was necessary. According to Dr. Lobel, Campbell's current list of medications, provided by Dr. Cummings, did not have serious side-effects. (*Id.* at 280-83.) Notably, each of the three peer reviews performed at Hartford's request were done independently without reference to previous peer review findings. (*Id.* at 286.)

Based on Dr. Lobel's report, Hartford informed Campbell of its final decision to terminate his benefits on June 4, 2012. It again explained its decision and provided ERISA appeal information. (*Id.* at 7-11.)

## II. PROPOSED CONCLUSIONS OF LAW

A. Standard of Review of a Plan Administrator's Decision to Terminate Benefits

When a plan administrator has discretionary authority to interpret the terms of the policy, the court reviews the administrator's decision to deny benefits under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115 (1989); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005). The plan at issue in this case contains express language vesting Hartford's plan administrator with the discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the Policy: "[Hartford has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Admin. R. 37, ECF No. 25-1.)

The arbitrary and capricious standard of review is an "extremely deferential" standard, *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014), which upholds an administrator's decision if it was the "result of a deliberate, principled reasoning process and is supported by substantial evidence," *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009)(internal quotation marks omitted). According to the Sixth Circuit, "[w]hen it is possible to offer a reasonable explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Cox v. Standard Ins. Co.*, 585 295, 302 (6th Cir. 2009). Thus, in making a determination based on the arbitrary and capricious standard of review, the court may only consider certain information. The court's role is limited to a review of the administrative record before the administrator at

the time of the final decision to deny benefits was made. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

B.  <u>Hartford's Decision to Terminate Campbell's Benefits</u>

Hartford contends that it engaged in a deliberate, well-reasoned process to terminate Campbell's LTD benefits, based on the medical evidence before it, its detailed employability analyses that identified several jobs that met Campbell's abilities and work experience, its video surveillance of Campbell's activities, and three independent physician peer reviews. Thus, Hartford argues, its decision was not arbitrary or capricious. (Def.'s Mem in Supp. of Mot. for J. on the Pleadings 4, ECF No. 31.) The court agrees and finds that Hartford's termination of Campbell's LTD benefits was not arbitrary and capricious based on the deliberate and reasoned process and substantial evidence described below.

First, Hartford's conclusion that Campbell could perform sedentary work was reasonable in light of his medical records. Hartford does not dispute that at the time of Campbell's July 30, 2008 surgery on his left foot, he was disabled and prevented from working. In fact, it provided coverage during that time. However, in the thirty-seven months that followed, additional evidence demonstrated his ability to perform alternative occupations, even in spite of his back and foot conditions, as

well as his obesity. This evidence included the reports of Drs. Huff and Dalal, as well as Dr. Cummings's conflicting opinions. Although Dr. Cummings indicated from December of 2009 until October of 2010 that Campbell's sitting should be limited to four hours and standing or walking to fifteen minutes, he unequivocally stated in a report in November of 2010 that Campbell was able to sit for eight hours in one day. (Admin. R. 91, ECF No. 25-3.) In January of 2011, however, after Campbell appealed Hartford's initial decision to terminate benefits, Dr. Cummings reinstated his four-hour sitting and fifteen-minute standing restrictions.

Based on these conflicting opinions about Campbell's ability to sit, walk, and stand, Hartford engaged an independent peer review, in which Dr. Errico spoke with Dr. Cummings directly. Dr. Cummings stated in a conversation in April of 2011 that Campbell could work eight-hour days in a sedentary position if he was given hourly breaks. (*Id.* at 147-48.) Dr. Cummings's own medical records corroborated the content of this conversation. (*Id.* at 13.) These facts reasonably gave rise to Hartford's reassessment of Campbell's ability to work and further investigation of his claim.

Second, Hartford engaged in multiple employability analyses based on the information provided to it to reasonably consider Campbell's capabilities. The administrative record indicates

that Hartford performed at least three employability analyses: (1) in November of 2010, after Dr. Cummings's report that Campbell could sit for eight hours, (*Id.* at 94-111); (2) in April of 2011 after Dr. Errico's peer review determined Campbell could sit for eight hours with frequent hourly breaks, (*Id.* at 157); and (3) in March of 2012, after Dr. Lewis's peer review concluded that Campbell did not require any restrictions on sitting, standing, walking, or lifting, (Admin. R. 308-10, ECF No. 25-2). These employability analyses took into account the information available to Hartford at the time regarding Campbell's ability to sit, walk, and stand, including Dr. Cummings's reports, Campbell's claimant questionnaires, surveillance videos of Campbell, and independent peer reviews.

Third, Hartford's surveillance of Campbell reasonably indicated that Campbell was capable of sitting, walking, standing, and bending to a greater extent that his claimant questionnaires indicated. Campbell left his home for several-hour stints to shop at six different stores, eat at a restaurant, and drive. He was also able to carry the trash to the street and squat to the ground. (Admin. R. 171-72, ECF No. 25-3.) When Hartford conducted a face-to-face interview of Campbell on November 1, 2011, Campbell was observed walking with a normal gait and standing with weight evenly distributed on both feet for over an hour. (*Id.* at 25-26.)

Finally, Hartford reasonably relied on three independent peer reviews conducted at its request by Drs. Errico, Lewis, and Lobel. Each of these reviews was conducted without viewing the opinions of prior peer reviews. The doctors viewed Campbell's medical records, attempted to speak with Dr. Cummings and Campbell, and reviewed the surveillance of Campbell. The peer reviews provide the bases of each doctors' opinion with particularity. (*See* Admin R. 147-53, ECF No. 25-3 (Dr. Errico's report); Admin. R. 346-49, ECF No. 25-2 (Dr. Lewis's report); Admin. R. 280-83, ECF No. 25-2 (Dr. Lobel's report)). After both Dr. Lewis and Dr. Lobel came to the same conclusion that Campbell did not require any standing, walking, or sitting restrictions, Hartford reasonably concluded he was capable of eight alternative sample positions.

These facts in the record support Hartford's reasonable finding that Campbell did not meet the definition of "total disability" under the Policy and no longer qualified for LTD benefits. Hartford's investigation and decision to terminate Campbell's benefits were the "result of a deliberate, principled reasoning process," which was "supported by substantial evidence." *DeLisle*, 558 F.3d at 444. Accordingly, the decision was not arbitrary and capricious, and the defendant's motion for judgment on the record should be granted.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that Hartford's motion for judgment on the record be granted and that Campbell's case be dismissed in full.

Respectfully submitted this 5th day of August, 2014.

s/Diane K. Vescovo
_____
DIANE K. VESCOVO
UNITED STATES MAGISTRATE
JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.